UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Stephan Nicholas Holmes, | Civil No. 22-cv-2985 (PJS/DJF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION AND ORDER** |
| Bob Fletcher et al., | |
| Defendants. | |

This is a pro se civil rights case brought by Plaintiff Stephen Nicholas Holmes, who is currently an inmate at the Oak Park Heights Minnesota Correctional Facility in Stillwater, Minnesota. In broad strokes, Mr. Holmes alleges he was subjected to excessive force during an incident on July 18, 2021, when an unidentified Ramsey County Correctional Officer maced Mr. Holmes, threw him out of his wheelchair to the ground, and put weight on his lower back where he had open wounds due to a recent surgery.

Mr. Holmes filed his Complaint (ECF No. 1) and application to proceed *in forma pauperis* ("IFP Application") (ECF No. 2) on November 28, 2022. In the time since then, Mr. Holmes filed: (1) a First Amended Complaint ("First Amended Complaint") (ECF No. 5); (2) two submissions purporting to add claims to his action on December 16 and 21, 2022 (ECF Nos. 6, 7); and (3) an Amended Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 ("Second Amended Complaint") (ECF No. 11). As discussed below, the Court construes the allegations asserted in the original Complaint and the various amendments to it (ECF Nos. 1, 5, 6, 7 and 11) collectively as the operative pleading in this matter ("Operative Complaint") and now reviews the Operative Complaint and Mr. Holmes' IFP application pursuant to 28 U.S.C. § 1915(e)(2).

Additionally, Mr. Holmes has filed: (1) a Motion for Appointment of Counsel ("Motion to Appoint") (ECF No. 4); (2) a motion seeking service of the summons upon Defendants ("Motion to Serve") (ECF No. 14); and (3) a motion asking the Court to hold all hearings in this matter via "Zoom/telephone" ("Motion for Remote Hearings") (ECF No. 16).

For the reasons given below, the Court recommends dismissing the Operative Complaint in part, allowing a portion of the claims to proceed, and granting Mr. Holmes' IFP Application. With respect to Mr. Holmes' other pending motions, the Court denies the Motion to Appoint,[1] denies the Motion to Serve as moot, and denies the Motion for Remote Hearings.

## I. BACKGROUND

### A. Mr. Holmes' Filings

The original Complaint asserts constitutional claims under 42 U.S.C. § 1983 and names four Defendants: (1) Ramsey County Sheriff Bob Fletcher;[2] (2) a "John Doe" Defendant, described as the Ramsey County corrections officer who allegedly accosted Holmes; (3) Ramsey County; and (4) the Ramsey County Adult Detention Center ("Ramsey County ADC")[3] (*See id*. at 1, 7; *see also* ECF No. 11 at 7.) Mr. Holmes submitted an IFP Application alongside his Complaint (ECF No. 2). On December 5, 2022, the Court ordered Mr. Holmes to pay his initial partial filing fee ("December 2022 Order") (ECF No. 3 at 3). A footnote in the December 2022 Order warned Mr. Holmes that "he should strongly consider filing a one-page addendum to the complaint

---

[1] The Court will, however, recommend Mr. Holmes' case to the Federal Bar Association ("FBA") Pro Se Project for possible referral to a volunteer lawyer.

[2] Although Mr. Holmes identifies Bob Fletcher as "Head Ramsey County Sheriff Deputy Bob Fletcher" (*see* ECF No. 11 at 1), the Court takes judicial notice of the fact that Bob Fletcher is in fact the Sheriff of Ramsey County, Minnesota.

[3] The Court construes Mr. Holmes' claims against "Ramsey County Sheriff ADC" or "Ramsey County ADC" in his various pleadings (*see* ECF Nos. 1, 5 and 11) as claims against the Ramsey County Adult Detention Center.

2

specifying the capacity in which he is suing [the individual] defendants." (*Id.* at 3 n.2.)

The Court next received a series of filings from Mr. Holmes, including:

- The Motion to Appoint, filed December 7, 2022, which asks the Court to appoint counsel for Mr. Holmes in this action (ECF No. 4).

- The First Amended Complaint filed December 15, 2022 (ECF No. 5). The First Amended Complaint adds several Defendants, specifically, various "John Doe" Defendants identified as corrections officers who interacted with Mr. Holmes after the altercation discussed in the original Complaint. (*See id*. at 4–5, 9–10.)

- A document titled "Amendment Complaint" filed December 16, 2022 (ECF No. 6). This document indicates Mr. Holmes intends to sue the first John Doe Defendant and Bob Fletcher in both their individual and official capacities. (*See id.*)

- Another document titled "Amended Complaint" filed December 21, 2022 (ECF No. 7). This document states that Mr. Holmes intends to bring claims under the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327, 327–78 (codified as amended in scattered sections of 29 and 42 U.S.C.) ("ADA"), and the Rehabilitation Act of 1973, Pub. L. No. 93-112, 87 Stat. 355, 355–94 (codified as amended in scattered sections of 29 U.S.C.), in addition to his section 1983 claims.

- The Second Amended Complaint filed January 20, 2023 (ECF No. 11). This document reiterates many—but not all—of the allegations in Mr. Holmes' prior pleadings and adds that he intends to sue all individual defendants, including six "John Doe" Defendants, in both their individual and official capacities. (*See id.* at 7.)

- The Motion to Serve filed March 27, 2023 (ECF No. 14), which asks the Court to serve Defendants with summonses (and presumably the Operative Complaint). (*See* ECF No. 14 at 1.)

- The Motion for Remote Hearings filed March 27, 2023 (ECF No. 16), which asks the Court to have all hearings take place over the telephone or through Zoom. (*See* ECF No. 16 at 1.)

### B.     Mr. Holmes' Claims

Mr. Homes alleges that on July 18, 2021, he was sitting in his wheelchair and using the phone in Unit 1B at the Ramsey County ADC. (ECF No. 5 at 4.) According to the allegations, John Doe #1 approached Mr. Homes and told him his phone time was up. (*Id.*) Mr. Holmes asked

3

for a few additional minutes, which John Doe #1 denied—stating he would mace Mr. Holmes if Mr. Holmes did not get off the phone immediately. (*Id.*)  Mr. Holmes told John Doe #1 he could not do that, asked him to call the sergeant, and continued talking on the phone. (*Id.*)  John Doe #1 then maced Mr. Holmes for what felt like 15 seconds, then grabbed Mr. Holmes from the back of his wheelchair and slammed him onto his stomach onto the floor.  (*Id.* at 5.)  In doing so, John Doe #1 dropped all of his weight on Mr. Holmes' lower back, where Mr. Holmes had an open wound from two emergency decompression surgeries to his L4 and L5 discs 47 days prior. (*Id.* at 4-5.)

Mr. Holmes further alleges that at some point during the altercation, or shortly thereafter, John Does #2-6 came running into the room. (ECF No. 11 at 4.)  Mr. Holmes heard someone screaming "get off him, watch his back," and felt hands starting to touch him and lift him off the floor. (*Id.*)  John Does #2-6 placed Mr. Holmes in his wheelchair, handcuffed him, and brought him to the "seg" unit. (*Id.*)  In the seg unit, John Does #2-6 placed Mr. Holmes in a cell on the bed, with his hands still cuffed behind his back, and left him in the cell in that handcuffed position. (*Id.*) Mr. Holmes could not see because of the mace burning him.  He attempted to get up to press the medical help button but fell in the process. (*Id.*)  At that point, John Does #2-6 came back to the cell and called a nurse. (*Id.*)  The nurse examined Mr. Holmes and concluded he needed to go to the emergency room. (*Id.*)  He went to the emergency room and was hospitalized overnight at Regions Hospital.  (ECF No. 5 at 5.)

Mr. Holmes does not allege Sheriff Bob Fletcher had any direct involvement in the incident underlying his claims.  Instead, Mr. Holmes alleges Sheriff Fletcher failed to properly train and supervise his officers. (ECF No. 11 at 6.)  He asserts these failures resulted in a custom of excessive force and cover-ups, retaliation for reporting instances of excessive force, and mental abuse by the officers. (*Id.* at 6.)

4

The Court construes the Operative Complaint as raising the following claims against all Defendants: (1) an ADA claim; (2) a Rehabilitation Act claim; and (3) Section 1983 claims pursuant to the Fourth, Eighth, Fourteenth and Eighteenth Amendments.[4] (*See* ECF No. 1 at 6-7; ECF No. 5 at 5; ECF No. 6 at 1-2; ECF No. 7 at 1; ECF No. 11 at 1.)  Mr. Holmes raises his claims against all individual Defendants in both their individual and official capacities.  (*See* ECF No. 11 at 7.)  He seeks $400,000 in compensatory damages (for "pain and suffering") and $600,000 in punitive damages.  (ECF No. 11 at 8.)  He also asks for an injunction requiring Ramsey County to "put in a new system to oversee use of force as well as training of dealing with people with disabilities."  (*Id.*)

## II. ANALYSIS

### A. Standard of Review

Mr. Holmes submitted an IFP Application in lieu of paying the applicable filing fee.  The IFP Application indicates Mr. Holmes is financially eligible to proceed IFP.  But under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [an IFP] case at any time if the court determines that … the action … fails to state a claim on which relief may be granted …."  28 U.S.C. § 1915(e)(2).  While the statute describes dismissal of an entire "case," courts in this District often rely on section 1915(e)(2) to dismiss portions of cases as well.  *See, e.g.*, *Bishop v. Swanson*, No. 12-cv-0135-KMM-DTS, 2023 WL 1786468, at *4 (D. Minn. Jan. 24, 2023) (citing cases), *report and recommendation adopted*, 2023 WL 2523902 (D. Minn. Mar. 15, 2023); *Perkins v. Daniels*, No. 19-cv-

---

[4] The Court notes the Eighteenth Amendment prohibited the sale of alcohol and that Section One of the Twenty-First Amendment repealed it. This portion of Mr. Holmes' claim is thus without a factual or legal basis.

5

2663-SRN-ECW, 2020 WL 6121268, at *2 (D. Minn. July 13, 2020) (same), *report and recommendation adopted*, 2020 WL 5495229 (D. Minn. Sept. 11, 2020).

When determining whether a complaint states a claim on which relief may be granted, a court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)). A complaint's factual allegations need not be detailed but must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). A complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In assessing a complaint's sufficiency, a court may disregard legal conclusions that are couched as factual allegations. *See, e.g.*, *id.* at 678 (citing *Twombly*, 550 U.S. at 555). A court's consideration of whether a complaint states a claim is "context-specific" and the court must "draw on its judicial experience and common sense." *Id.* at 679; *see also, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)). Courts are to construe pro se complaints "liberally," but such pleadings still must allege enough facts to support the claims advanced. *See, e.g.*, *Sandknop v. Mo. Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

### B. Pleading Requirements

Ordinarily a complaint must be a free-standing document that contains all of the plaintiff's allegations, without reference to other pleadings. D. Minn. L.R. 15.1(a) ("Unless the Court orders otherwise, any amended pleading must be complete in itself and must not incorporate by reference any prior pleading."). But because Mr. Holmes is pro se, the Court liberally construes the original Complaint (ECF No. 1), the First Amended Complaint (ECF No. 5), the two filings at ECF Nos.

6

6 and 7, and the Second Amended Complaint (ECF No. 11), together as a single Operative Complaint for purposes of prescreening pursuant to 28 U.S.C. § 1915(e)(2).  *See, e.g.*, *Librace v. Moody*, 4:21-cv-01198-KGB, 2022 WL 17905561, at *1 (E.D. Ark. Dec. 22, 2022) ("The Court performs its screening function by examining Mr. Librace's complaint and notice of case status (Dkt. Nos. 2; 4), construing together these two entries as Mr. Librace's operative complaint.") (citations omitted); *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1029 n.2 (D. Minn. 2010) ("The [pro se] Amended Pleading clearly intends to incorporate the claims alleged in the original Complaint, and so, we read the two pleadings together for purposes of the instant motion.")

Notwithstanding Mr. Holmes' pro se status, he must comply with applicable substantive and procedural law when filing documents before the Court.  *See Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986).  In relevant part, Federal Rule of Civil Procedure ("FRCP") 15 and the District of Minnesota's Local Rule 15 govern the filing of amended pleadings.  FRCP 15 states that a plaintiff may amend his complaint only once as a matter of course, and after that only with the opposing party's consent or leave of court.  Fed. R. Civ. P. 15(a).  In this case, because Mr. Holmes has already filed several amended complaints, no other complaints or amendments to complaints will be accepted unless: (1) Defendants consent; or (2) Mr. Holmes files a motion to amend the Operative Complaint and receives the Court's permission to do so before he files it.  If Defendants do not consent, and a motion to amend is required, Local Rule 15.1(b) applies.  This Rule states:

> Any motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading.

Since Mr. Holmes has filed several partial pleadings to date, he is pro se, and he is incarcerated—such that he may not have access to software permitting automated document

7

comparison—the Court will not require strict adherence to the redlining requirement of Local Rule 15.1(b) going forward. Instead, Mr. Holmes must, at the very least, attach a complete copy of the proposed amended complaint to his motion and explain clearly how it differs from his Operative Complaint. Moreover, any future proposed amended complaint must be a stand-alone document containing all of the claims and allegations Mr. Holmes seeks to lodge against the remaining Defendants as required by Local Rule 15.1(a).

### C. Claims Analysis

#### 1. Claims against the Ramsey County ADC

The Court views the naming of the Ramsey County ADC as a defendant as an attempt to sue the ADC directly. But jails and correctional facilities are not suable entities to be named as defendants. *See, e.g.*, *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam); *Washington v. Anoka Cnty. Jail*, No. 10-cv-4938-JRT-FLN, 2012 WL 1886482, at *3 (D. Minn. May 2, 2012) (citing cases), *report and recommendation adopted*, 2012 WL 1886479 (D. Minn. May 23, 2012). The Court recommends dismissing Mr. Holmes' claims against the Ramsey County ADC with prejudice for these reasons.

#### 2. ADA and Rehabilitation Act claims

The precise basis for Mr. Holmes' ADA claim is unclear because he does not identify the ADA provision on which he relies. (*See* ECF No. 11 at 1.) The most applicable provision appears to be Title II of the ADA, which applies to "public services." Under Title II, 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Title II applies to state and local prisons. *See, e.g.*, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–11 (1998); *Rinehart v. Weitzell*, 964 F.3d 684, 688 n.4 (8th Cir. 2020) (quoting *Yeskey*, 524 U.S. at 210).

8

The basis for Mr. Holmes' Rehabilitation Act claim is similarly unclear, but Mr. Holmes likely refers to 29 U.S.C. § 794.  Under section 794(a), as relevant here, "[n]o otherwise qualified individual with a disability in the United States …, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …."  A "program or activity" includes "all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government."  *Id.* at § 794(b)(1)(A).

"Cases interpreting either the ADA or the Rehabilitation Act are 'applicable and interchangeable' because the Acts are 'similar in substance.'"  *Gustafson v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 29 F.4th 406, 412 (8th Cir. 2022) (quoting *Randolph v. Rogers*, 170 F.3d 850, 858 (8th Cir. 1999)).  Thus, both Title II ADA claims and analogous Rehabilitation Act claims require plaintiffs to establish the same elements. *E.g.*, *Gorman v. Bartch*, 152 F.3d 907, 911-12 (8th Cir. 1998).  The Court accordingly addresses these claims together.

To state a claim under either statute, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability."  *Rinehart*, 964 F.3d at 688 (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (brackets in *Rinehart*)); *Phillips v. City of Minneapolis*, No. 21-cv-1463-WMW-BRT, 2022 WL 484971, at *1 (D. Minn. Feb. 16, 2022) (citing *Baribeau*, 596 F.3d at 484).

Assuming for present purposes that Mr. Holmes has sufficiently pled the first two elements, the Court concludes he has not sufficiently pled the third.  There is nothing in the Operative Complaint from which a reasonable inference may be drawn that any relevant conduct was motivated

9

by Mr. Holmes' disability. While the alleged conduct is problematic, nothing in the Operative Complaint suggests any of the Defendants did what they allegedly did *because of* Mr. Holmes' disability. Because this is a necessary element of Mr. Holmes' ADA and Rehabilitation Act claims, the Court recommends dismissing them without prejudice.

### 3. Section 1983 claims

Mr. Holmes' remaining claims are constitutional claims under 42 U.S.C. § 1983. (*See, e.g.*, ECF No. 11 at 4) (referring to "excessive force"). Defendants can be sued under section 1983 in their individual capacities, their official capacities, or both. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (discussing differences between individual-capacity claims and official-capacity claims); *Gorman*, 152 F.3d at 914 (citing *Hafer*, 502 U.S. 21 (2000)). Mr. Holmes sues all of the individual Defendants in both their official and individual capacities (*see* ECF No. 11 at 7).

#### a. Official-capacity claims

Mr. Holmes' official-capacity claims, as presently pleaded, do not state a cognizable claim for relief. All of the individual Defendants appear to be Ramsey County employees, so all the official-capacity claims here are effectively claims against Ramsey County. "[U]nder § 1983, local governments"—like Ramsey County—"are responsible only for 'their own illegal acts'"; they "are not vicariously liable … for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in *Connick*)); *see also, e.g.*, *Perkins v. Hastings*, 915 F.3d 512, 521 (8th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). For a government to deprive someone of his or her constitutional rights, the relevant injury must have been due to "action pursuant to official municipal policy." *Connick*, 563 U.S. at 60 (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Connick*, 563 U.S. at 61 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and

-
-
-

widespread as to practically have the force of law.") (citations omitted).

Mr. Holmes fails to allege with any specificity that a Ramsey County policy or practice caused his alleged injury. He asserts only that Sheriff Fletcher's failure to properly train and supervise his officers has created "customs and policies" of excessive force, cover ups and retaliation for reporting instances of excessive force, and mental abuse by the officers. (*See* ECF No. 11 at 4, 6.) He does not identify any policy or training that is allegedly defective or allege facts demonstrating any routine custom or practice of misconduct that rises to the force of policy. Without more detail this is a conclusory legal statement, which the Court cannot credit in determining whether Mr. Holmes states a claim for relief. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In the absence of any detailed factual allegations with respect to which Ramsey County policies are defective, how they are defective, and how they resulted in the alleged conduct at issue, the Operative Complaint fails to state any official-capacity claims against Defendants. The Court recommends dismissing the official-capacity claims in the Operative Complaint without prejudice.

### b.   *Individual-capacity claims*

The Court similarly recommends dismissing the individual-capacity claims against Sheriff Fletcher. As previously noted, Mr. Holmes' only allegations regarding Sheriff Fletcher are barebones assertions that he "failed to properly train his officers" and did not "supervise" them. (*See* ECF No. 11 at 4.) These are vague conclusory assertions that the Court cannot credit in deciding whether Mr. Holmes states a claim for relief. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Because Mr. Holmes fails to articulate how Sheriff Fletcher personally participated in or caused the incident upon which his claims are based, the Court recommends dismissing the individual-capacity claims against Sheriff Fletcher.

Mr. Holmes also asserts individual-capacity claims against John Does #1-6. In contrast

with the claims against Sheriff Fletcher, these claims are based on the John Doe Defendants' alleged direct involvement in the conduct at issue. The Court finds the allegations supporting these claims are sufficiently detailed to proceed beyond initial screening. In making this finding the Court reaches no conclusions regarding the ultimate viability of these claims. The Court will allow these claims to move forward without prejudice to the John Doe Defendants' right to respond in any manner consistent with the Federal Rules of Civil Procedure, including bringing a motion to dismiss under Rule 12. Moreover, since these claims survive initial screening, the Court will grant Mr. Holmes' IFP application and will direct the U.S. Marshals Service to handle service for Mr. Homes.

Because the only defendants remaining are the John Doe Defendants, however, this case is still at risk of dismissal at an early stage because the Court cannot direct the U.S. Marshals Service to serve unidentified individuals. To avoid such a dismissal, Mr. Holmes must identify one or more of the John Doe Defendants by name and file an amended complaint naming them as defendants within the time allowed for service as set forth below.

Federal Rule of Civil Procedure 4(m) sets a time limit on service of the complaint and summons on defendants:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Under this rule, Mr. Holmes has 90 days from the date he filed the original Complaint to serve Defendants. The Court received the Complaint on November 28, 2022, making the initial service deadline February 26, 2023. Since the Court is still conducting its initial review of Mr. Holmes' pleadings, however, Mr. Holmes has good cause for his failure to serve by that date. *See*

Fed. R. Civ. P. 6(b). The Court will extend the time for service until 90 days from the date of this Order.

For the Court to order service by the extended deadline, Mr. Holmes first must file a Third Amended Complaint identifying at least one John Doe defendant by name;[5] otherwise service will be impossible, and the Court will have to dismiss this action for failure to serve them under Rule 4(m). The Court accordingly grants Mr. Holmes leave to file a Third Amended Complaint to identify at least one John Doe Defendant by name. **He must file it on or before July 13, 2023 to avoid dismissal of this action.** His Third Amended Complaint must be a stand-alone document that includes all of his allegations against the remaining Defendants without reference to his earlier-filed complaints, as required by Local Rule 15.1(a).

D.  **Non-Dispositive Motions**

1.  **Motion to Appoint**

Mr. Holmes seeks appointment of an attorney free of charge, as he has had difficulty retaining private counsel and alleges at least one attorney has told him the attorney is unable to take the case due to its complexity (ECF No. 4). Additionally, he argues that due to his disability he is only able to access the phone once a day, which makes contacting potential counsel even more difficult. (*Id.*) There is no constitutional or statutory right to appointed counsel in civil litigation. *See, e.g.*, *Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 889 (8th Cir. 2020) (quoting *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996). Whether to appoint counsel in a civil proceeding like this one is a decision "committed to the discretion of the trial court." *McCall v. Benson*, 114

---

[5] Alternatively, Mr. Holmes could file a Third Amended Complaint that provides sufficiently detailed allegations regarding his claims against Ramsey County or Sheriff Fletcher to survive initial screening. Doing so would make service possible even if Mr. Holmes cannot identify any of the John Doe Defendants by name.

F.3d 754, 756 (8th Cir. 1997) (citing cases). Factors to consider include "(1) the factual complexity of the issues; (2) the ability of the indigent person to investigate the facts; (3) the existence of conflicting testimony; (4) the ability [of the] indigent person to present the claims; and (5) the complexity of the legal arguments." *Crozier*, 973 F.3d at 889 (citing cases).

The Court recognizes Mr. Holmes' strong desire for the appointment of counsel. At the present time, however, the Court has no reason to believe that this action is particularly complex, either factually or legally. Nor, given the subject matter, is there much reason to doubt that Mr. Holmes can adequately investigate the relevant facts. While Mr. Holmes has submitted numerous filings that have not always been perfectly clear, the Court believes he has been able to express his positions and allegations with sufficient clarity. And at this early stage of the proceeding, there is no reason to believe that conflicting testimony will present any difficulties. The *Crozier* factors weigh in favor of denying Mr. Holmes' request for appointment of counsel at this stage in the proceedings.

However, the Court will refer Mr. Holmes by separate order to the Federal Bar Association, which has a panel of volunteer lawyers who can often assist pro se litigants. The Court encourages Mr. Holmes to contact the FBA and ask that organization to help him find a lawyer to assist him in drafting an amended complaint—and the Court encourages the FBA to find an attorney willing to assist Mr. Holmes in drafting an amended complaint that complies with the Federal Rules of Civil Procedure and this Order.

    **2.**    **Motion to Serve**

In his Motion to Serve, Mr. Holmes requests that each Defendant be served a summons in this matter (ECF No. 14). This motion duplicates a portion of the relief Mr. Holmes seeks through his IFP Application. Since the Court grants Mr. Holmes' IFP application, it will direct the U.S. Marshals Service to serve any Defendant against whom Mr. Holmes' claims survive initial

screening. The Court accordingly denies Mr. Holmes' Motion to Serve as moot.

### 3. Motion for Remote Hearings

In his Motion for Remote Hearings, Mr. Holmes requests that the Court enter an order requiring all hearings in this case to be held via telephone or Zoom (ECF No. 16). The Court is not averse to conducting hearings by telephone or Zoom, and notes both the difficulties presented by Mr. Holmes' confinement and his expressed preference. But the Court will not enter a blanket order requiring all hearings to be held remotely. The Court accordingly denies the Motion for Remote Hearings without prejudice and will address whether to hold any hearings scheduled in this matter remotely on a case-by-case basis.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. All claims against the Ramsey County ADC be **DISMISSED WITH PREJUDICE**;

2. Mr. Holmes' Eighteenth Amendment claims pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE** as to all Defendants;

3. Mr. Holmes' remaining claims against Defendant Bob Fletcher be **DISMISSED WITHOUT PREJUDICE**; and

4. Mr. Holmes' (1) Americans with Disabilities Act claims; (2) Rehabilitation Act claims; and (3) official-capacity claims under the Fourth, Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against the John Doe Defendants be **DISMISSED WITHOUT PREJUDICE**.

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The Application to Proceed in District Court Without Prepaying Fees or Costs (ECF No. [2]) is **GRANTED.**

2. The Motion for Appointment of Counsel (ECF No. [4]) is **DENIED WITHOUT PREJUDICE**.

3. The Motion to Serve (ECF No. [14]) is **DENIED** as moot.

3. The Motion for Remote Hearings (ECF No. [16]) is **DENIED WITHOUT PREUDICE**.

4. The Court grants Mr. Holmes leave to file a Third Amended Complaint, which shall be due before **July 13, 2023**.

5. Mr. Holmes' deadline to serve the Summons and Third Amended Complaint—under Federal Rule of Civil Procedure 4(m)—is extended until **July 13, 2023**.

Dated: April 14, 2023     *s/ Dulce J. Foster*
　　　　　　　　　　　　　Dulce J. Foster
　　　　　　　　　　　　　United States Magistrate Judge